## IN THE UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF OHIO
### (Western Division)

In re:

WILLIAM M. APOSTELOS

          Involuntary Chapter 7 Debtor.

Case No. 14-33677

Judge Lawrence S. Walter

Chapter 7

---

## MOTION OF PETITIONING CREDITORS PURSUANT TO 11 U.S.C. 303(g) FOR ORDER DIRECTING APPOINTMENT OF INTERIM TRUSTEE AND MEMORANDUM IN SUPPORT

---

### JURISDICTION

1.      This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The bases for relief requested herein are section 303(g) of Title 11 of the United States Code (as amended from time to time, the "Bankruptcy Code") and Rule 2001 of the Federal Rules of Bankruptcy Procedure.

2075964.7

## SUMMARY OF ARGUMENT

3.      Petitioning Creditors brought this involuntary petition upon their collective unpaid claims which total $5,222,082.81.  On October 15, 2014 (the "Petition Date"), the three Petitioning Creditors filed an involuntary bankruptcy petition against Debtor for relief under Chapter 7 of the Bankruptcy Code (the "Involuntary Petition").

4.      The Petitioning Creditors hold unsecured claims in excess of $5 million that are neither contingent as to liability nor subject of a bona fide dispute.  The Petitioning Creditors' claims against Debtor have been reduced to judgments and remain unpaid.  As set forth in the Involuntary Petition, the Petitioning Creditors' unpaid claims total $5,222,082.81:  Dr. Rafael M. Cruz is owed $3,699,298.56, Dr. Gloria M. Cruz is owed $818,374.25, and Dr. Joseph P. Mullane is owed $704,410.00.  These debts are also accruing interest at various rates.

## BACKGROUND

5.      The Involuntary Chapter 7 Debtor William M. Apostelos ("Debtor" or "Apostelos") orchestrated a fraudulent investment scheme which robbed Dr. Rafael M. Cruz, his daughter Dr. Gloria M. Cruz, and her husband Dr. Joseph P. Mullane (the "Petitioning Creditors"), and likely many more creditors, of significant amounts of their savings.  Debtor also operated and purportedly still operates a number of Ohio companies geared toward investment and real estate asset management.  He held himself out as a knowledgeable real estate investor and securities trader.  He solicited investment capital from people in southwest Ohio and around the country with promises of large returns.  To solidify these promises, Apostelos executed and delivered cognovit promissory notes (the "Notes") to investors, including to the Petitioning Creditors.  The Notes were made payable in short periods of time, sometimes in a matter of months, with interest rates as high as 50 percent.  Debtor made periodic payments to the

2

Petitioning Creditors to give the impression their investments were earning high returns. Unfortunately, these short-term, high-yield investments were illusory and were the product of Debtor's Ponzi scheme.

6.       As Debtor's scheme unraveled, the periodic payments that Petitioning Creditors depended on became less frequent, until eventually the payments ceased altogether.  Petitioning Creditors' Notes, which totaled over $5 million, are now in default.

7.       However, Petitioning Creditors were not the only creditors with outstanding debts from Apostelos in the last few months.  Other litigation involving Apostelos has concluded by way of judgment.  The following cases were filed in the Warren County Common Pleas Court against Apostelos between June and September 2014:

  a. *Maximum Flight Advantages, LLC v. William Apostelos*, 2014 CV 85753, initially filed on May 23, 2014 – Judgment for $280,000 (attached hereto as Exhibit A);

  b. *Dave Dennis, Inc. and Jason Dennis v. Midwest Green Resources, LLC, William Apostelos, and WMA Enterprises, LLC*, 2014 CV 85892, initially filed on June 23, 2014–Judgment against Debtor for $1,106,690.41 (attached hereto as Exhibit B);

  c. *Christopher Heizer v. William Apostelos*, 2014 CV 85984, initially filed on July 15, 2014 – Judgment for $338,417.91 (attached hereto as Exhibit C);

  d. *Susan Wenrick v. William Apostelos*, 2014 CV 86147, initially filed on August 20, 2014 – Judgment for $60,000 (attached hereto as Exhibit D);

  e. *Tony Michael v. William Apostelos*, 2014 CV 86235, initially filed on September 12, 2014 – Judgment for $3,740,000 (attached hereto as Exhibit E);

3

f.   *Daniel Peffley v. William Apostelos*, 2014 CV 86299, initially filed on
September 25, 2014 – Judgment for $1,276,169.62 (attached hereto as Exhibit
F);

g.   *Christopher Heizer v. Apostelos, Midwest Green Resources, LLC, WMA
Enterprises, LLC, Banyon Group, Inc., and Innovesting, Inc.*, 2014 CV 86326,
initially filed on September 29, 2014 – Judgment for $221,687.00 (attached
hereto as Exhibit G).

## PETITIONING CREDITORS' CLAIMS

8.     When Debtor defaulted on Petitioning Creditors' Notes, they did not initially
panic because Petitioning Creditors were assured by Apostelos that their money was safe.
However, after the rash of recent legal actions against Apostelos to recover on unpaid debts,
Petitioning Creditors began to understand the gravity of the situation.  After several informal
attempts to collect on their debts, the Petitioning Creditors resorted to litigation.

9.     Petitioning Creditors reduced their cognovit promissory notes to judgment
together in one civil action, along with other creditors, filed in the Common Pleas Court of
Warren County Ohio.  The action, *Cruz, et al. v. Apostelos*, was filed on October 1, 2014, and
judgment was entered in their favor on October 2, 2014.  Attached hereto as Exhibit H.

10.     Debtor was not making payments on the Notes as they became due, and he has
failed to satisfy the judgments.  Petitioning Creditors' claims are not contingent nor are they the
subject of a bona fide dispute.  Indeed, Apostelos' debts are past due and memorialized in the
judgments.  Apostelos is a person who is not paying his debts as they become due and may be a
debtor under Chapter 7 of the Bankruptcy Code.

4

11.    There is not yet an order for relief in this case.  An interim trustee is necessary in this matter to preserve property of Debtor's estate and prevent loss to the Debtor's estate and its creditors.  Accordingly, with this Motion the Petitioning Creditors request this Court direct the appointment of an interim trustee.

**MEMORANDUM IN SUPPORT**

## I.    STANDARD FOR APPOINTMENT OF AN INTERIM TRUSTEE UNDER SECTION 303(g)

The Petitioning Creditors request the appointment of an interim trustee because it is likely the assets of Debtor's estate will be dissipated to an amount insufficient to satisfy Petitioning Creditors' claims within a short period of time.  Thus, an interim trustee is necessary to preserve the property of Debtor's estate, and is further necessary to prevent loss to the estate. Section 303(g) of the Bankruptcy Code and Rule 2001 of the Federal Rules of Bankruptcy Procedure authorize the appointment of an interim trustee after a Chapter 7 involuntary bankruptcy case is commenced.

> At any time after the commencement of an involuntary case under chapter 7 of this title but before an order for relief in the case, the court, on request of a party in interest, after notice to the debtor and a hearing, and if necessary to preserve the property of the estate or to prevent loss to the estate, may order the United States trustee to appoint an interim trustee under section 701 of this title to take possession of the property of the estate and to operate any business of the debtor.

11 U.S.C. § 303(g).  In an involuntary case, as opposed to a voluntary case, the order for relief is only entered if the petition is not successfully or timely controverted by the debtor.  This period of time before the order for relief is issued is known as the "gap" period.  *In re Pucci Shoes, Inc.*, 120 F.3d 38, 41 (4th Cir. 1997).  Pursuant to section 303(g), an interim trustee may be appointed during the "gap" period to prevent the debtor from dissipating his or her assets.  *See In re The*

5

*Centre for Management and Technology, Inc.*, 2007 WL 3197221, *2 (Bankr. D. Md. Oct. 26, 2007); *In re James Plaza Joint Venture*, 62 B.R. 959, 961 (Bankr. S.D. Tex. 1986) (appointing interim trustee in involuntary Chapter 7 bankruptcy pursuant to section 303(g) standard).

As a preliminary matter, the bankruptcy court must determine whether there is a reasonable likelihood or probability that the debtor will eventually be found to be a proper involuntary debtor pursuant to section 303, and that the court will enter an order for relief. *See In re Professional Accountants Referral Services, Inc.*, 142 B.R. 424, 429 (Bankr. D. Colo. 1992). This determination is made so as to avoid appointing an interim trustee in a case that will soon be dismissed. *Centre for Management and Technology*, 2007 WL 3197221, *3.

### a.  An Order for Relief in this Case Will Likely Be Entered

It is likely that the Court will enter an order for relief in this case. In accordance with section 303(a), an involuntary petition may be filed against a person subject to a bankruptcy case under Chapter 7 of the Bankruptcy Code. Further, an involuntary case may be commenced by the filing of a petition "by three or more entities, each of which is ... a holder of a claim against such person that is not contingent as to liability or the subject of a bona fide dispute as to liability or amount, ... if such noncontingent, undisputed claims aggregate at least $14,425 more than the value of any lien on property of the debtor securing such claims held by the holder of such claims ...." 11 U.S.C. § 303(b)(1).

Here, Debtor is a person who is not paying his debts as they become due, and therefore subject to a Chapter 7 bankruptcy case. Petitioning Creditors' judgment is more than $5 million. The promissory notes were all in default before they were reduced to judgment. Further indication of Debtor's failure to pay his debts is the rash of recent judgments entered against him in the Warren County Common Pleas Court totaling millions of dollars. With respect to the

6

claim threshold amount, Petitioning Creditors' claims, which total over $5 million, clearly

aggregate at least $14,425 more than any lien securing the claims, as required by section 303(b).

Therefore, this leaves the determination as to whether Petitioning Creditors' claims are not

contingent as to liability or the subject of a bona fide dispute as to liability or amount.

### b. Petitioning Creditors' Claims are not Contingent as to Liability

Under section 303(b), a creditor cannot file an involuntary petition against an alleged

debtor unless the creditor's claim is "not contingent as to liability." A claim is contingent as to

liability if the obligation to pay depends on an extrinsic or future event. *See In re Mavellia*, 149

B.R. 301, 304 (Bankr. E.D.N.Y. 1991). Here, Petitioning Creditors' claims were based upon

cognovit promissory notes that were in default. By the nature of a cognovit note, in the event of

non-payment of any principal or interest, the entire amount owed becomes due without notice or

demand. Now, the Notes have been reduced to a judgment. The obligation to pay presently

exists. Accordingly, the Petitioning Creditors' claims are noncontingent.

### c. Petitioning Creditors' Claims are not the Subject of a Bona Fide Dispute as to Liability or Amount

Pursuant to section 303(b), to file an involuntary petition a creditor's claims cannot be the

subject of a bona fide dispute as to liability or amount. Here, there is no dispute that Debtor

owes Petitioning Creditors at least $5 million arising from the obligations in the Notes, and now

the Judgment. However, even if Debtor were to dispute a portion of the judgment, it would not

disqualify Petitioning Creditors' claims. "For a bona fide dispute to be relevant, it must at least

have the potential to reduce the total of petitioners' claims to an amount below the statutory

threshold." *In re DemirCo Holdings, Inc.*, 2006 WL 1663237, *3 (Bankr. C.D. Ill. June 9,

2006). The Petitioning Creditors' claims are not in dispute, let alone the subject of a bona fide

dispute.

2075964.7

Therefore, because the requirements for commencing an involuntary petition have been met, it is likely an order for relief in this case will be entered.

## II. APPOINTMENT OF AN INTERIM TRUSTEE IS NECESSARY TO PRESERVE THE PROPERTY OF THE DEBTOR'S ESTATE AND PREVENT LOSS TO THE ESTATE

The Petitioning Creditors seek the immediate appointment of an interim trustee to protect the assets of Debtor's estate, prevent concealment, waste or loss of assets, and importantly to avoid the irreparable harm Petitioning Creditors will suffer if Debtor is permitted to dissipate and deplete assets currently under his control. For years the Debtor ran what may be described as a Ponzi scheme by promising high yields on short-term transactions. The only way Debtor was able to sustain the scheme was by using new investor funds to pay existing debtors – characteristics typical of a Ponzi scheme. Due to the nature of the scheme, it is imperative that an interim trustee begin work immediately to marshal all of Debtor's assets, as well as begin assessing whether suspected fraudulent transfers made in furtherance of the scheme may be recovered and properly distributed to creditors. To prevent further loss to Petitioning Creditors, as well as to other creditors, an interim trustee needs to be appointed.

Courts install interim trustees in instances where it is necessary to protect and preserve the property of the debtor's estate. *See In re DiLorenzo*, 161 B.R. 752, 754 n.8 (Bankr. S.D.N.Y. 1993) (providing circumstances where courts have installed interim trustees). Specifically, interim trustees are appointed when necessary to protect the debtor's estate by preventing the concealment, waste, loss, or conversion of the assets by the alleged debtor. *Id.*; *see also In re Rush*, 10 B.R. 518, 523 (Bankr. N.D. Ala. 1980). Quite simply, an interim trustee needs to be appointed when the alleged debtor may cause irreparable harm to the estate during the gap period. *See, e.g., In re Lollipop, Inc.*, 205 B.R. 682, 684 (Bankr. E.D.N.Y. 1997) (interim trustee

8

appointed where debtor's principals were depleting company's assets and converting the

proceeds for personal use); *Matter of R.S. Grist Co.*, 16 B.R. 872, 873 (Bankr. S.D. Fla. 1982)

(appointment of interim trustee was necessary to prevent diversion of assets from debtor's estate

without adequate consideration); *In re Gems N' Things, Inc.*, 60 B.R. 288, 289 (Bankr. S.D.N.Y.

1986) (interim trustee installed where debtor posted notice that it was going out of business and

liquidating assets and concern that debtor was diverting cash receipts and collections to improper

use).

Here, there is an immediate necessity for an interim trustee.  At a September 27, 2014

meeting with Dr. Gloria M. Cruz, one of the three Petitioning Creditors, the Debtor declared he

intended to "sell it all."  Declaration of Dr. Gloria M. Cruz ("Cruz Decl.") ¶ 7.  Debtor also

disclosed at this meeting that he had several hundred thousand dollars in a bank account.  Cruz

Decl. ¶ 8.  With his debts estimated at over $10 million, there is a very real possibility Debtor

will decide to cash out this bank account and disappear.  Debtor has also claimed to Petitioning

Creditors that if he started to sell off his assets he would do so in an orderly fashion.  Cruz Decl.

¶ 9.  However, Debtor, as the perpetrator of a Ponzi scheme, simply cannot be trusted.  Thus,

while Petitioning Creditors would welcome the orderly distribution of assets, the allocation and

distribution would be best conducted by an interim trustee.  With respect to the preservation of

assets, Petitioning Creditors learned Debtor paid over $1 million for a farm property in August

2013 which he immediately placed into a personal trust in an effort to take his name off of it.

Clark County, Ohio - Property Record Card, Parcel 1301505999000008; Clark County, Ohio -

Property Record Card, Parcel 1301505999000009 (attached hereto as Exhibit I).  Not only has

the Debtor masterminded a multi-year scheme, which by itself should warrant an interim

2075964.7

trustee's involvement, but he also has a history of concealing assets. Thus, the relief sought in the Motion is necessary.

Furthermore, the appointment of an interim trustee will not harm the Debtor. The Debtor's practice is to funnel assets into a number of companies that purchase and hold assets such as real estate. For instance, the companies will purchase pieces of land in western states as long-term investments. Interestingly, this investment strategy does not jibe with the Debtor's scheme of promising investors large short-term returns. Nonetheless, the appointment of an interim trustee to protect the Debtor's assets will not interfere with Debtor's business ventures. Because of the nature of these businesses, there will be no negative impact on their operation. Unlike a retail store, where any interference by an interim trustee could grind business to a halt, here Debtor and his businesses have no inventory and no customer traffic.  Accordingly, Debtor will not be harmed by the appointment of an interim trustee.

Finally, William M. Apostelos is not a run-of-the-mill debtor. He was and is the perpetrator of a fraudulent investment scheme that has scammed Petitioning Creditors out of millions. In the case of Dr. Rafael M. Cruz, the Debtor stole most everything he had. This was a scheme from its inception. These debts arose from fraudulent transactions, which is even more reason for an interim trustee to take control of the Debtor's estate to protect any remaining assets. The Debtor will suffer no harm if an interim trustee is appointed. On the other hand, there is a real potential for irreparable harm to the Petitioning Creditors if the Court does not direct the appointment of an interim trustee.

### a. An Interim Trustee May Be Appointed Without Notice to the Debtor

An interim trustee may be appointed pursuant to section 303(g) without notice to the Debtor if irreparable loss to the estate would otherwise result. *Matter of R.S. Grist Co.*, 16 B.R.

10

2075964.7

872, 873 (Bankr. S.D. Fla. 1982). In *R.S. Grist*, the debtors had failed to repay $5 million, were

under investigation by the Organized Crime Strike Force of the United States Justice

Department, and the primary debtor had admitted in a meeting with the creditor that he had no

assets and provided no explanation as to the disposition of the loans he received. *Id*. at 872-73.

The district court adopted the bankruptcy judge's finding that, under these circumstances, the

appointment of an interim trustee without notice to the debtor was necessary to preserve the

assets of the debtor's estate and to prevent diversion of assets. *Id*. at 873.

Similarly, here the Debtor has failed to repay well over $5 million. The money invested

by Petitioning Creditors was fraudulently injected into an ongoing scheme. Even more, at the

September 27, 2014 meeting between a Petitioning Creditor and the Debtor, which was attended

by attorneys for both parties, the Debtor claimed his assets were limited, disclosing the existence

of a PNC Bank account containing a mere $250,000. Given Petitioning Creditors' judgment of

over $5 million, the Debtor's assets disclosed thus far would not even come close to satisfying

the judgment. Additionally, as in *R.S. Grist*, the Debtor here has offered no explanation as to the

disposition of the millions of dollars the Petitioning Creditors invested. Debtor is also a risk to

abscond with the remaining assets currently under his control. Therefore, an interim trustee may

be appointed here without notice to the Debtor to avoid irreparable loss to the Debtor's estate.

### b. Bond Should Be Set at One Hundred Dollars ($100)

Pursuant to Rule 2001(b), "[a]n interim trustee may not be appointed under this rule

unless the movant furnishes a bond in an amount approved by the court, conditioned to

indemnify the debtor for costs, attorney's fees, expenses, and damages allowable under § 303(i)

of the Code." However, because the Debtor will not suffer harm when the interim trustee is

appointed, there is no need for a bond to indemnify the Debtor. Furthermore, as explained

11

2075964.7

above, Petitioning Creditors have met the involuntary petition requirements and therefore the

petition will not likely be dismissed and no damages will be assessed per section 303(i).

Accordingly, Petitioning Creditors request the Court set the bond amount at $100.

### c.   Robert G. Hanseman is Qualified and Willing to Serve as Interim Trustee

Pursuant to 11 U.S.C. § 321(a), if an individual is competent to perform the duties of

trustee and has an office in the judicial district within which the case is pending, that person may

serve as a trustee in a Chapter 7 involuntary bankruptcy case.  Beyond meeting these minimum

eligibility requirements, the undersigned is qualified to serve as interim trustee and perform the

trustee's duties pursuant to 11 U.S.C. § 704(a).

Undersigned counsel has been admitted to practice law in the United States District Court

for the Southern District of Ohio since 2001.  Debtor operated a fraudulent scheme and

undersigned has experience in "mopping up" a Ponzi-type scheme, by dint of being appointed

receiver by the Montgomery County Common Pleas Court in *Zurz v. Dillabaugh*, 2008 CV

05911.  The *Dillabaugh* case involved a local person, Roy Dillabaugh, who posed as an

investment advisor and swindled many victims out of their life savings.  Part of the

undersigned's duties in that case was to investigate the location of assets, marshal those assets

and create a claims process for the ultimate distribution of recoverable assets to the victims.

The undersigned has been practicing in the field of bankruptcy law since 2002 and it has

become a substantial portion of his overall legal practice.  The undersigned has been involved in

many bankruptcy cases, both in Ohio and elsewhere, as local counsel, trial counsel, and/or

referring counsel.

Specific to the instant case, the undersigned's law firm of Sebaly Shillito + Dyer

represents the Petitioning Creditors.  The firm also represents Leah A. Cruz, Alexandra Cruz

12

2075964.7

Mullane, Liz Nickell, and Dr. Rafael Cruz, Jr., who have all been victimized by the fraudulent

scheme perpetrated by Debtor.  Therefore, undersigned counsel is well-versed in the

circumstances surrounding the Petitioning Creditors' investments with Debtor, as well as the

eventual unraveling of the scheme.  Undersigned is well-equipped to marshal all potential assets

and preserve the Debtor's estate for the benefit of all creditors.  Therefore, Petitioning Creditors

request this Court direct the United States Trustee to appoint Robert G. Hanseman, Esq. as

interim trustee to serve in the instant matter.

### III.    CONCLUSION

WHEREFORE, for all the reasons detailed above, Petitioning Creditors respectfully

request the Court enter an order directing the United States Trustee for the Southern District of

Ohio to appoint Robert G. Hanseman, Esq. as interim trustee pursuant to section 303(g) of the

Bankruptcy Code and Rule 2001 of the Federal Rules of Bankruptcy Procedure.

Dated: October 16, 2014

Respectfully submitted,


*/s/ Robert G. Hanseman*
Robert G. Hanseman      (0071825)
Toby K. Henderson       (0071378)
Michael J. Leddy        (0091164)
SEBALY SHILLITO + DYER
A Legal Professional Association
1900 Kettering Tower
40 North Main Street
Dayton, OH  45423-1013
(937) 222-2500
(937) 222-6554 (fax)
rhanseman@ssdlaw.com
*Attorneys for Petitioners*

13

2075964.7

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that a copy of the foregoing *Motion of Petitioning Creditors Pursuant to 11 U.S.C. 303(g) for Order Directing Appointment of Interim Trustee and Memorandum in Support* was served on October 16, 2014 upon the following parties via ECF at the email address registered with the Court:

U.S. Trustee                          USTPRegion09.CB.ECF@usdoj.gov

The undersigned further certifies that on October 16, 2014 the following parties were served a copy of the foregoing *Motion of Petitioning Creditors Pursuant to 11 U.S.C. 303(g) for Order Directing Appointment of Interim Trustee and Memorandum in Support* via First-Class U.S. mail:

William M. Apostelos
35 Commercial Way
Springboro, OH 45066

U.S. Trustee
Office of the U.S. Trustee
170 N. High St., Ste. 200
Columbus, OH 43215-2417

Respectfully submitted,

*/s/ Robert G. Hanseman*
Robert G. Hanseman

14

2075964.7